IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROCK DESIGN, INC., an Oregon
corporation,

      Plaintiff,

  v.

LODESTONE CONSTRUCTION, INC., a
Washington corporation, and DANIEL J.
BAYNE, a resident of Washington,

      Defendants.

CV. 07-1431-AS

FINDINGS AND
RECOMMENDATION

ASHMANSKAS, Magistrate Judge:

  Defendants Lodestone Construction, Inc., and Daniel Bayne ("Defendants") filed a motion to dismiss for improper venue pursuant to FED. R. CIV. PRO. 12(b)(3). According to Defendants, Rock Design, Inc. ("Plaintiff"), is precluded from filing this claim in the District of Oregon because the parties executed an Asset Purchase Agreement ("APA") containing a venue provision requiring all claims arising thereunder be filed in Pacific County, Washington. Plaintiff counters that the dispute arises out of a separate Security Agreement ("SA") that contains no such venue provision

and, accordingly, the case should not be dismissed for improper venue. The court agrees with Plaintiff that the venue provision contained in the APA does not extend to the SA. Venue is therefore proper in the District of Oregon and Defendants' motion should be denied.

## LEGAL STANDARD

The Ninth Circuit set forth its standard for evaluating Rule 12(b)(3) motions in Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133 (9th Cir. 2004). It held that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party" Id. at 1138. "However, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings." Holland America Line Inc. v. Wartsila North America, Inc., 485 F.3d 450, 455 (9th Cir. 2007) (citing Murphy, 362 F.3d at 1137). Where the developed facts are insufficient to overcome the presumption in favor of the non-moving party, "it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. . . . Alternatively, the district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the records eliminates any genuine factual issue." Murphy, 362 F.3d at 1139.

## FACTS

The parties entered into two written agreements on July 10, 2006. The first was an agreement that Plaintiff would purchase several of Defendants' assets in exchange for the purchase price of $300,000.00. This agreement was signed by Daniel J. Bayne on behalf of Lodestone Construction, Inc. ("Defendant Lodestone") (the seller), Mr. Bayne himself, ("Defendant Bayne") (the principal), and Adrian O'Farrell on behalf of Plaintiff (the buyer). It was drafted by Plaintiff's

counsel. The second agreement was a Security Agreement granting a security interest to Defendants in all assets (and proceeds arising therefrom) that were the subject matter of the APA. (Pl.'s Exhibit A at 1.) This agreement was also drafted by Plaintiff's counsel and signed only by Plaintiff.

The APA governs the sale of "all right, title and interest of [Defendant Lodestone] in and to all business assets of [Defendant Lodestone] consisting of all business property necessary to conduct, and utilized in, the operations of [Defendant Lodestone]." (Pl.'s Exhibit B, at 1). The APA includes a provision labeled "Applicable Law" which states: "This Agreement shall be governed by and construed in accordance with the laws and decisions of the state of Washington. If litigation is instituted by a party to enforce or interpret this Agreement, venue shall lie in Pacific County, Washington. Such venue is exclusive." Id. at 9-10. For purposes of claims arising from the APA, it is clear that venue lies exclusively in Pacific County, Washington.

The APA also includes a curious provision labeled "Integration." It reads: "This agreement contains the entire agreement and understanding of the parties with respect to the subject matter of it, and supersedes all prior and contemporaneous agreements, oral or written. Except as set forth in this agreement, there are no promises, representations, agreements or understandings, oral or written, among the parties relating to the subject matter of this agreement." Id. at 11 (all caps omitted).    The SA grants Defendant Lodestone a security interest in all assets listed in the APA. The agreement does not include a venue provision, nor does it speak to the issue of integration. The SA does explicitly reference the APA. It reads: "For new value, the current receipt and reasonable equivalence of which are hereby acknowledged, the debtor grants a security interest in all of the debtor's property listed on Exhibit 2.1 attached to the Asset Purchase Agreement." (Pl.'s Exhibit A at 1.)  It names as an obligation under the SA, "payment by the debtor of the Section 3.2

obligation under the Asset Purchase Agreement." Id.  Section 3.2 refers to the payment terms of the APA.

The SA also makes two references to potential litigation.  First, under "Rights and Remedies" it authorizes Defendant Lodestone to "exercise all rights and remedies available to the secured party under this security agreement and applicable law." Id. at 3.  Under the same section, the SA provides for attorney fees to "[t]he prevailing party in the trial or appeal of any civil action, arbitration, or other adversary proceeding relating to this security agreement or any related offset, defense, or counterclaim." Id.

The complaint filed by Plaintiff states that "the parties entered into a written agreement whereby, Plaintiff agreed to pledge certain assets to Defendant Lodestone.  These assets were encumbered pursuant to a [SA] which is attached as Exhibit A and hereby incorporated by reference."  (Complaint at 2.)  The complaint alleged claims for breach of contract, unjust enrichment, conversion, accounting, and injunctive relief.  The breach allegedly occurred when Defendants engaged in unlawful repossession of the encumbered assets in violation of the SA.

## DISCUSSION

The specific question presented by the motion to dismiss for improper venue is whether the exclusive venue provision in the APA applies to Plaintiff's claim, allegedly arising from the unlawful repossession of assets secured by the SA.  Plaintiff does not argue that the venue provision in the APA is invalid for claims arising under the APA, nor does there appear to be any reason to question its validity.  The issue of whether minimum contacts exist to maintain jurisdiction in the District of Oregon or the Western District of Washington is of no consequence for purposes of this motion.  Instead, the court must address two specific issues: (1) whether the SA is subject to the

venue provision in the APA and if not, (2) whether the claim arises from the APA, the SA, or both.

As to the first issue, the APA contains an "integration clause." The first sentence of the integration clause establishes the APA as the governing document in this asset purchase transaction. It references "contemporaneous agreements," which could potentially refer to the SA, executed on the same day as the APA. However, the second sentence of the integration clause states that the agreement is solely governed by the APA, not any other "promise[], representation[], agreement[] or understanding[], oral or written." This portion of the integration clause seems to preclude any other agreement, including the SA, from having an impact on the terms and conditions of the APA. In this way, the integration clause fails to integrate any separate or ancillary agreements into the APA to form a larger agreement. Strangely, neither party attempted to give the court any guidance as to the meaning of the integration clause. For these reasons, the court gives little weight to this provision.

In this circuit, the validity and effect of forum-selection clauses are governed by federal law. Manetti-Farrow v. Gucci America, Inc., 858 F.2d 509 (9th Cir. 1988). This case, however, presents a question of contract interpretation which is deemed substantive and therefore the province of state law. ("In this diversity action, the federal district court must apply the substantive law of the forum state." Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 209 (9th Cir. 1980.) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).) Under Oregon law, "[w]hen parties contemporaneously execute multiple agreements that address interrelated subjects, we are bound to construe them together as one contract to discern the parties' intent." Snow Mountain Pine, Ltd. v. Tecton Laminates Corp., 126 Or. App. 523, 528 (1994).

It is undisputed that the agreements were executed on the same day. The agreements also

share common subject matter, namely the assets bought and sold under the APA and secured by the SA. The APA and the SA are related agreements and the SA expressly references the APA. First, the SA states that it secures obligations "under the Asset Purchase Agreement." Second, it references the payment terms in Section 3.2 of the APA. Third, it identifies the assets in question by referencing the list of property attached to the APA in Exhibit 2.1. To the extent that collateral is at issue in the overarching dispute, the court will be forced to reference the APA to identify what collateral the SA governs. However, the venue provision in the APA states that "[i]f litigation is instituted by a party to enforce or interpret this Agreement, venue shall lie in Pacific County, Washington." Using APA as a list of the assets secured under the SA does not require the court to enforce or interpret the APA.

The president of Rock Design stated that he "specifically refused to include a venue clause in the [SA]." (Declaration of Adrian O'Farrell at 2). This statement was not disputed by Defendants. When construing the meaning of contract terms, "[t]he court's goal is to give effect to the intention of the contracting parties." Anderson v. Jensen Racing, Inc., 324 Or. 570, 575-576 (1997). Accordingly, if the omission of the venue provision from the SA was bargained for, which the court must assume true absent evidence to the contrary, then the venue provision must not be extended to the SA.

Even if the omission of the venue provision was unintentional, the court is reluctant to extend the venue provision. First, the integration clause is ambiguous and gives no guidance as to how the APA and the SA interact. Second, the venue provision applies to litigation to "enforce or interpret" the APA. Plaintiff's allegations do not trigger enforcement or interpretation of the APA. Third, each claim alleged in the complaint arises from Defendants alleged unlawful repossession and not from

the terms of the sale outlined in the APA. For these reasons, Defendants' motion to dismiss for improper venue should be denied.

## CONCLUSION

For the reasons stated, Defendants' motion to dismiss for improper venue [5] should be DENIED.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than February 5, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 22nd day of January, 2008.

                                                  /s/ Donald C. Ashmanskas
                                                  DONALD C. ASHMANSKAS
                                                  United States Magistrate Judge